UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT KENIFIC, JR.; and SARAH SCHRAMM,

                         Plaintiffs,

v.                                                       5:07-CV-0213
                                                         (GTS/ATB)

OSWEGO COUNTY; OSWEGO COUNTY DEPT.
OF SOC. SERVS.; ONONDAGA COUNTY;
ONONDAGA COUNTY DEPT. OF SOC. SERVS.;
CHRIS RILEY, Employee of Onondaga County Dept.
of Soc. Servs.;[1] D. HAYNES, Employee of Oswego
County Dept. of Soc. Servs.;[2] and JOHN AND JANE
DOE(S); Employees of Onondaga and Oswego County
Depts. of Soc. Servs.,

                         Defendants.

_____

APPEARANCES:                                             OF COUNSEL:

LAW OFFICE OF AJ BOSMAN                                   AJ BOSMAN, ESQ.
  Counsel for Plaintiffs
6599 Martin Street
Rome, NY 13440

LAW OFFICE OF FRANK W. MILLER                             FRANK W. MILLER, ESQ.
  Counsel for Oswego County Defendants
6575 Kirkville Road
East Syracuse, NY 13057

OFFICE OF ONONDAGA COUNTY ATTORNEY                        KATHLEEN DOUGHERTY, ESQ.
  Counsel for Onondaga County Defendants                    Deputy County Attorney
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

---

[1]      Although Plaintiffs' Complaint identifies this Defendant as "Chris Riley," it appears from the motion papers that this Defendant's name is properly spelled "Christopher O'Reilly." (Dkt. No. 20, Attach. 7.)  The Clerk's Office is directed to amend the docket sheet accordingly.

[2]      Although Plaintiffs' Complaint identifies this Defendant merely as "D. Haynes," it appears from the motion papers that this Defendant's name is Deborah Haynes.  (Dkt. No. 19, Attach. 2.)  The Clerk's Office is directed to amend the docket sheet accordingly.

<u>**MEMORANDUM DECISION and ORDER**</u>

Currently before the Court in this civil rights action filed by Robert Kenific, Jr. and Sarah Schramm ("Plaintiffs") are the following two motions: (1) a motion, filed by Oswego County, Oswego County Department of Social Services, Deborah Haynes, and John and Jane Does employed by Oswego County ("Oswego County Defendants"), to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for the lack of a genuine issue of material fact regarding Plaintiffs' claims pursuant to Fed. R. Civ. P. 56 (Dkt. No. 19); and (2) a motion, filed by Onondaga County, Onondaga County Department of Social Services, and Christopher O'Reilly ("Onondaga County Defendants"), to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for the lack of a genuine issue of material fact regarding Plaintiffs' claims pursuant to Fed. R. Civ. P. 56 (Dkt. No. 20).  For the reasons set forth below, Defendants' motions for summary judgment are denied as premature, and Defendants' motions to dismiss for failure to state a claim are granted.

## I.    BACKGROUND

### A.    Relevant Procedural History

On February 27, 2007, Plaintiffs' filed their Complaint in this action.  (Dkt. No. 1.)  On March 26, 2007, the Onondaga County Defendants filed an Answer to Plaintiffs' Complaint. (Dkt. No. 14.)

On April 26, 2007, prior to the start of discovery, the Oswego County Defendants filed a motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment Fed. R. Civ. P. 56.  (Dkt. No. 19.)  In support of their alternative motion for summary

judgment, the Oswego County Defendants submitted a Local Rule 7.1 Statement, as well as supporting record evidence.  (Dkt. No. 19, Attach. 2 and 5.)

On May 21, 2007, the Onondaga County Defendants filed a motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment Fed. R. Civ. P. 56.  (Dkt. No. 20.)  In support of their alternative motion for summary judgment, the Onondaga County Defendants submitted record evidence as well as a (timely served but belatedly filed) Local Rule 7.1 Statement.  (Dkt. No. 20, Attach. 1-7; Dkt. No. 24; Dkt. No. 31, ¶ 3 [Dougherty Affid.]; Dkt. No. 31, Attach 1.)

Also on May 21, 2007, Plaintiffs filed an Amended Complaint.  (Dkt. No. 21.)

On May 29, 2007, the Oswego County Defendants amended their aforementioned motion so as to address the new claims and allegations asserted in Plaintiffs' Amended Complaint.  (Dkt. No. 26.)  On June 1, 2007, the Onondaga County Defendants sought to adopt by reference the Oswego County Defendants' legal arguments.  (Dkt. No. 28, at 1.)

On June 18, 2007, Plaintiffs filed their responses to Defendants' motions.  (Dkt. No. 29.) In those responses, Plaintiffs did not submit either a Local Rule 7.1 Response or record evidence. (*Id*.)  Instead, they requested discovery pursuant to Fed. R. Civ. P. 56(f).  (Dkt. No. 29, ¶ 2 [Bosman Affirm.].)

On July 25, 2007, Defendants' filed their replies to Plaintiffs' responses.  (Dkt. Nos. 30-31.)

B.     **Plaintiffs' Claims**

Generally, Plaintiffs' Amended Complaint arises out of the following alleged events.  On or about May 25, 2005, Plaintiff Robert Kenific, Jr.'s minor child was placed in his care and custody by the child's mother due to the child's domestic dispute with, and use of violence

3

against, the child's mother in the mother's household.  (Dkt. No. 21, at ¶ 16.)  While in Plaintiff

Kenific's care and custody, the child resided with Plaintiff Kenific and his domestic partner,

Plaintiff Sarah Schramm.  (*Id*. at ¶ 15.)  At some point during that residence, the child was

diagnosed with a psychiatric or psychological disorder or disability, and was treated by

physicians for that condition.  (*Id*. at ¶¶ 14, 17.)  Despite this treatment, the child initiated and

committed acts of violence upon Plaintiff Kenific, requiring Plaintiffs to contact and request the

assistance of the Onondaga County Sheriff's Department.  (*Id*. at ¶ 17.)  Upon doctor's orders,

Plaintiff Kenific transported the child, in or about September of 2005, to a Comprehensive

Psychiatric Evaluation Program ("CPEP") for treatment.  (*Id*. at ¶ 18.)  As a result of Plaintiff

Kenific's transportation of the child to CPEP, either the child or his mother–who was employed

by the Onondaga County Department of Social Services–falsely reported that the child had been

abused, and the Onondaga County Department of Social Services was contacted.  (*Id*. at ¶¶ 19,

40.)  Based upon a conflict of interest due to the employment of the child's mother, the

Onondaga County Department of Social Services subsequently employed the services of the

Oswego County Department of Social Services.  (*Id*. at ¶¶ 19, 21.)  After conducting some sort

of investigation in the matter, the Oswego County Department of Social Services sent letters to

Plaintiffs, dated November 30, 2005, labeling them as child abusers.  (*Id*. at ¶ 47.)

     As a result, Plaintiffs assert the following six causes of action against Defendants:

     (1) a cause of action claiming that the **Oswego County Defendants** recklessly or

intentionally conducted an incomplete and **improper investigation** of allegations of child abuse

and neglect against Plaintiffs, and deliberately rendered a premature and **false finding** that

Plaintiff Kenific had committed such abuse and neglect, breaching their **duty to Plaintiffs** to

conduct a careful investigation without bias and based upon credible evidence (*id.* at ¶¶ 20-28);

(2) a cause of action claiming that **all Defendants** unjustly and **falsely accused** Plaintiff Kenific of abusing his minor child, **threatened** Plaintiff Kenific with criminal charges if he did not relinquish custody of the child, inflated and **manufactured evidence** to find Plaintiff Kenific guilty of abusing or neglecting the child, **damaged the name** and reputation of Plaintiff Kenific by falsely finding that he abused the child, and **damaged the name** and reputation of Plaintiff Schramm by falsely reporting that she had abused or neglected the child, in violation of 42 U.S.C. § 1983 and Plaintiffs' **right to substantive and procedural due process** under the Fourteenth Amendment of the United States Constitution (*id*. at ¶¶ 29-36);

(3) a cause of action claiming that the **Oswego County Defendants** engaged in a **conspiracy** with one another to deprive Plaintiffs of their aforementioned due process rights under the Fourteenth Amendment, by knowingly or recklessly relying on and using **false information** provided by the Onondaga County Defendants regarding allegations of abuse or neglect made by Plaintiff Kenific's minor child and/or the child's mother (who was employed by Defendant Onondaga County Department of Social Services), recklessly conducting an incomplete and **improper investigation** of those allegations, agreeing to render a premature and **false finding** that Plaintiff Kenific had committed such abuse and neglect, and knowingly or recklessly **interfering with the psychiatric treatment** and care of Plaintiff Kenific's minor child in CPEP (*id*. at ¶¶ 37-43);

(4) a cause of action claiming that **all Defendants** have committed **defamation** and **abuse of process** against Plaintiffs by working in unison to conduct an incomplete and **improper investigation** of the alleged abuse and neglect of Plaintiff Kenific's minor child, working in unison to prematurely and **wrongfully accuse** Plaintiffs of such abuse and neglect, causing Defendant Oswego County Department of Social Services to **send false letters** to

Plaintiffs dated November 30, 2005, that labeled Plaintiffs as child abusers, and (upon information and belief) **publishing those letters** to third parties (*id.* at ¶¶ 44-49);[3]

(5) a cause of action claiming that the **Oswego County Defendants**, in finding that Plaintiff Kenific had abused and/or neglected his minor child, either treated Plaintiff Kenific **differently from others similarly situated** with the intent to inhibit or punish his exercise of his Fourteenth Amendment rights (e.g., his right to maintain custody of his minor child, raise that child, and make medical decisions concerning that child's care) or acted **without any rational basis**, in violation of Plaintiff Robert Kenific's **right to equal protection of the laws** under the Fourteenth Amendment to the United States Constitution and under the New York State Constitution (*id.*, at ¶¶ 50-54); and

(6) a cause of action claiming that **Defendant Oswego County** and **Defendant Oswego County Department of Social Services** should be subjected to **municipal liability** for the unconstitutional acts of their employees, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because they had a **custom, policy or practice** of making findings of child abuse and/or neglect against parents or child custodians based upon **hearsay allegations of intoxication** without any legitimate basis, and they relied on or implemented that custom, policy or practice in this case to find that Plaintiff Kenific had committed such abuse and/or neglect of his minor child (*id.*, at ¶¶ 55-60).

### C.   Defendants' Motions and Plaintiffs' Response

For the sake of brevity, familiarity with the numerous legal arguments contained in the parties' motion papers is assumed in this Decision and Order, which is intended primarily for review by the parties.  The Court will make only three observations about those arguments.

---

[3]       As indicated below in Part I.B. of this Decision and Order, the Court liberally construes Plaintiffs' Fourth Cause of Action as consisting of two distinct claims: (1) defamation and (2) abuse of process.

First, at various points in their motion papers, all counsel in the case exhibit a certain casualness with the distinction between a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and a dismissal pursuant to Fed. R. Civ. P. 56, often seamlessly shifting between standards in the same paragraph.  Of course, the former dismissal is based on a pleading insufficiency, while the latter dismissal is based on an evidentiary insufficiency.  Toward the end of eliminating any confusion that has ensued as a result of this casualness, the Court will explain how it construes the parties' motion papers.

In the Oswego County Defendants' motion, they challenge only the *pleading* sufficiency of Plaintiffs' First Cause of Action (claiming breach of the duty to conduct a careful investigation without bias and based upon credible evidence), Third Cause of Action (claiming conspiracy to violate Plaintiffs' right to due process under the Fourteenth Amendment), Fifth Cause of Action (claiming a violation of their right to equal protection of the laws under the United States and New York State Constitutions), and Sixth Cause of Action (claiming that Oswego County and the Oswego County Department of Social Services are subject to municipal liability based on the existence of an offending custom, policy or practice).  (Dkt. No. 19, Attach. 3; Dkt. No. 26.)  In addition, they challenge both the *pleading* sufficiency and (in the alternative) the *evidentiary* sufficiency of Plaintiffs' Second Cause of Action (claiming a violation of their right to substantive and procedural due process under the Fourteenth Amendment), Fourth Cause of Action (claiming defamation and abuse of process), and claims against Defendant Haynes and the John and Jane Does based on the doctrine of qualified immunity.  (*Id.*)

In the Onondaga County Defendants' motion, they challenge both the *pleading* sufficiency and (in the alternative) the *evidentiary* sufficiency of Plaintiffs' Third Cause of Action (claiming conspiracy to violate Plaintiffs' right to due process under the Fourteenth

Amendment), Fourth Cause of Action (claiming defamation and abuse of process), Sixth Cause

of Action (to the extent it claims that *Onondaga* County and the *Onondaga* County Department

of Social Services are subject to municipal liability based on the existence of an offending

custom, policy or practice), and claims against Defendant Onondaga County Department of

Social Services, as well as Plaintiff Schramm's claims against the Onondaga County Defendants.

(Dkt. No. 20, Attach. 8.)  In addition, they challenge only the *evidentiary* sufficiency of

Plaintiffs' claims against Defendant Onondaga County Department of Social Services based on

the doctrine of qualified immunity.  (*Id.*)

Second, in their response to Defendants' motions, Plaintiffs decline to adduce any record

evidence whatsoever.  (Dkt. No. 29.)  Rather, Plaintiffs argue, in pertinent part, that summary

judgment at this stage would be improper because Defendants' affidavits are replete with

hearsay and self-serving declarations, there has been no discovery, and no Answer from the

Oswego County Defendants.  (Dkt. No. 29, Attach. 1.)[4]  More specifically, in support of their

first argument, Plaintiffs' counsel states as follows:

> The Defendants are in possession of case files, notes, statements,
> documents, records, and information directly relevant to the Plaintiffs'
> suit. Plaintiffs have not had any access to these discovery items to date
> and cannot fully and properly respond to a motion for summary
> judgment in the absence of the discovery. Plaintiffs are prejudiced by
> deprivation of discovery and summary judgment is improper at this
> early stage.

(Dkt. No. 29, ¶ 5 [Bosman Affirm.].)

---

[4]       Plaintiffs also argue that (1) Plaintiffs have alleged facts plausibly suggesting that
Defendants violated Plaintiffs' constitutional rights; and (2) Defendants are not entitled to
immunity under New York State Social Services Law § 419, because the statute only provides
for immunity for persons reporting, not investigating, abuse.  (Dkt. No. 29, Attach. 1.)

In their replies to Plaintiffs' response, Defendants argue, in pertinent part, that, under the circumstances, it is proper to grant summary judgment prior to the conducting of discovery. (Dkt. No. 30, Attach. 2; Dkt. No. 31.)[5]  More specifically, in support of Defendants' second argument, the Oswego County Defendants' counsel states as follows:

> Upon information and belief, all the evidence used to investigate the Plaintiffs has already been disclosed to the Plaintiffs prior to the commencement of this action, particularly during Mr. Kenific's request for administrative review of his 'indicated report' status. Plaintiffs had access to their file, and if either Plaintiff was aware of any witness who had knowledge casting doubt upon the Defendants, they had every opportunity to collect witness statements or affidavits, or any other evidence that would have supported their allegations. Further, it should be noted that Plaintiffs should know whether they had been injured or defamed. Yet, the Plaintiffs do not submit a single affidavit or sworn statement to support their claim.

(Dkt. No. 30, ¶ 10 [Miller Affirm.].)

Third, in their six-page memorandum of law submitted in response to Defendants' motions, Plaintiffs have willfully failed to address numerous legal arguments asserted by Defendants in their memoranda of law.  (*Compare* Dkt. No. 29, Attach. 1 *with* Dkt. No. 19, Attach. 3 *and* Dkt. No. 20, Attach. 8 *and* Dkt. No. 26.)

The Court finds that this failure to respond was willful for four reasons.  First, in their Notice of Motion, the Oswego County Defendants expressly "demand[ed] that answering papers be served in accordance with Local Rule 7, of the Rules of the Northern District of New York." (Dkt. No. 19, at 1.)  Second, Plaintiffs' counsel is an experienced litigator in federal court, fully

---

[5]       In addition to reiterating arguments previously advanced by them, Defendants also argue that (1) the factual assertions contained in Defendants' Local Rule 7.1 Statement should be deemed admitted due to Plaintiffs' failure to submit a Local Rule 7.1 Response, and (2) Plaintiffs' failure to oppose several legal arguments asserted by Defendants in their memoranda of law (including legal arguments regarding the pleading insufficiency, not merely the evidentiary insufficiency, of Plaintiffs' claims) should be deemed as Plaintiffs' consent to those legal arguments.  (Dkt. No. 30, Attach. 2; Dkt. No. 31.)

aware of the requirements of Local Rule 7.1.  Indeed, she has been specifically reminded of this requirement in the past by at least four different district judges of this Court.  *See, e.g., Dotson v. City of Syracuse*, 04-CV-1388, 2009 WL 2176127, at *1 n.3 (N.D.N.Y. July 21, 2009) (Mordue, C.J.) (noting plaintiff's counsel's failure to fully comply with Local Rule 7.1, and deeming defendants' statement of fact admitted by plaintiff to the extent plaintiff's responses violate Local Rule 7.1); *Lee v. City of Syracuse*, 603 F. Supp.2d 417, 430-31 (N.D.N.Y. 2009) (Hurd, J.) (outlining the requirements of Local Rule 7.1, noting that plaintiff's counsel's objecting to certain material facts only on grounds of admissibility "provides no indication that the fact[s] [are] untrue," and therefore deeming those facts admitted by plaintiff); *Hawkins v. County of Oneida*, 497 F. Supp. 2d 362, 379-80 (N.D.N.Y. 2007) (Hurd, J.) ("In light of the lack of evidence produced in support of these claims, and plaintiff's failure to address them in response to defendants' motion for summary judgment, defendants' motion for summary judgment on plaintiff's common law claims will be granted."); *Lore v. City of Syracuse*, 00-CV-1833, 2007 WL 655628, at *1-3 (N.D.N.Y. Feb. 26, 2007) (Munson, J.) (denying, without prejudice, defendant's motion for summary judgment based on "both parties' counsels' non-compliance with the Local Rules practice [specifically Rule 7.1], and advising parties' of the requirements of Rule 7.1, and their need to comply with these requirements); *cf. Brown v. City of Syracuse*, 01-CV-1523, 2008 WL 5451020, at *2, 5 & n.7 (N.D.N.Y. Dec. 31, 2008) (Scullin, J.) (reviewing facial merit of defendants' request for dismissal of plaintiff's procedural due process claim, in light of plaintiff's failure to respond to that request).  Third, in the Oswego County Defendants' Amended Memorandum of Law (filed on May 29, 2007), the Oswego County Defendants notified Plaintiffs of their failure to respond, giving them a further opportunity (i.e., in their Reply to that Amended Memorandum) to correct their failure.  (*See, e.g.*,  Dkt. No. 26, at 5-10

[attaching pages "2" through "7" of the Oswego County Defs.' Am. Memo. of Law, arguing, *inter alia*, that "[t]hese multiple grounds have not been addressed either by the amendments or by any argument in opposition"). Fourth, nearly two months passed between the filing of the Oswego County Defendants' motion and the filing of Plaintiffs' response papers, more than enough time to research and craft an appropriate response to all of Defendants' legal arguments. (*Compare* Dkt. No. 19 with Dkt. No. 29.) However, despite these facts, Plaintiffs chose not to avail themselves of two opportunities to respond to various legal arguments asserted by Defendants. (*See generally* Dkt. No. 29, Attach. 1.)

Rather than recite the numerous legal arguments Plaintiffs fail to oppose, the Court will simply recite the few legal arguments Plaintiffs' do oppose. Specifically, in addition to generally opposing Defendants' request for summary judgment, Plaintiffs oppose, or partially oppose, only the following legal arguments asserted by Defendants: (1) Defendants' challenge to the *pleading* sufficiency of Plaintiffs' First Cause of Action (claiming breach of the duty to conduct a careful investigation without bias and based upon credible evidence) and/or Plaintiffs' Fourth Cause of Action (to the extent it claimed abuse of process);[6] (2) Defendants' challenge to the pleading sufficiency of Plaintiffs' claims against Defendant Haynes based on the doctrine of qualified immunity; and (3) Defendants' challenge to the pleading sufficiency of Plaintiffs' Second Cause of Action (claiming a violation of their right to substantive and procedural due process under the Fourteenth Amendment) on the ground that they have not articulated a recognizable constitutional right. (Dkt. No. 29, Attach. 1.)

---

[6]     The Court notes that, while Plaintiffs oppose some of Defendants' challenges to Plaintiffs' First Cause of Action, Plaintiffs fail to oppose Defendants' challenge based on the applicable statute of limitations.

## II.    GOVERNING LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) [citations omitted].

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Jackson*, 549 F. Supp.2d at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 [citations omitted]; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965 [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. [citations omitted].[7]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims.[8]  It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "*Specific* facts are not necessary" to successfully state a claim under

---

[7]     "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Thus, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., but "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

[8]     *Rusyniak*, 629 F. Supp.2d at 214 & n.34 [citations omitted].

13

Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[9]

As the Supreme Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 1949 [citations omitted]. Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal citations and alterations omitted).

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.

---

[9] *Rusyniak,* 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*) [citations omitted].

**B.      Rule 56 Motion for Summary Judgment**

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party."  *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]; *see also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted].  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[10]  For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has willfully failed to properly respond to that statement.[11]

## III.    ANALYSIS

### A.    Preliminary Issues

#### 1.    Defendants' Motion for Summary Judgment

As explained above, Defendants have moved, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.  However, before a Court grants summary judgment, the non-movant "must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment."  *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotations omitted).  "Thus, summary judgment may be premature before an adequate opportunity for discovery."  *Fowler v. Scores Holding Co., Inc.*, 677 F. Supp.2d 673, 677 n.1 (S.D.N.Y. 2009) (citing *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 [2d Cir. 1995]).

Here, the Court notes that at least one of the documents adduced by Defendants in support of their motions was referenced in Plaintiffs' Amended Complaint and thus was

---

[10]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[11]    Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

presumably in their possession when they filed suit in this action.  (Dkt. No. 19, Attach. 2

[attaching letter of November 30, 2005].)  Moreover, the Court is suspicious of the accuracy of

Plaintiffs' counsel's sworn statement that, during the nearly eighteen months that elapsed

between November 30, 2005 (the date on which Plaintiff Kenific was sent a letter notifying him

that the report of inadequate guardianship by him had been "indicated" or "founded") and April

26, 2007 (the date on which the Oswego Defendants filed their motion), Plaintiffs' did not have a

reasonable opportunity to uncover at least some of the other evidence relevant to their claims

(e.g., a list of the persons interviewed as part of the Oswego County Defendants' investigation,

the Domestic Incident Report signed by Plaintiff Kenific, the Report of Suspected Child Abuse

or Maltreatment, etc).[12]  Certainly, Plaintiffs could have submitted their own affidavits in

opposition to Defendants' motions.  However, they did not do so.

Moreover, they make only a passing reference to Fed. R. Civ. P. 56(f).  Rule 56(f)

provides a narrow exception to the availability of summary judgment in instances where a party

cannot fairly respond to a summary judgment motion because of the inability, through no fault of

that party, to acquire evidence which is available and would preclude the entry of summary

judgment.[13]  More specifically, in order to successfully assert a Fed. R. Civ. P. 56(f) defense to a

summary judgment motion, a litigant must provide specific indication of the evidence sought, its

relevance to the issues underlying the motion, the efforts that were made to attain that evidence,

---

[12]    The Court notes that the November 30, 2005, letter states, "[Y]ou are entitled to
request a copy of all information regarding the report contained in the State Central Register."
(Dkt. No. 19, Attach. 2.)

[13]    *See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919,
925-27 (2d Cir.1985); *Crystalline H2O, Inc. v. Orminski*, 105 F. Supp.2d 3, 6-9 (N.D.N.Y.2000)
(McAvoy, J.).

and why those efforts have been unsuccessful.[14]  Here, Plaintiffs have done none of these things.

However, the Court is mindful of the serious civil rights claims that have been asserted by Plaintiffs.  Moreover, the Court is mindful of the fact that the Oswego County Defendants' counsel's statement that "all the evidence used to investigate the Plaintiffs has already been disclosed to the Plaintiffs prior to the commencement of this action" is made only "[u]pon information and belief."

For these reasons, the Court denies Defendants' motion for summary judgment as premature, and treats Defendants' motions only as motions to dismiss for failure to state a claim. *See Fowler*, 677 F. Supp.2d at 677 n.1 (treating defendant's motion for summary judgment as only a motion to dismiss, because discovery has not been completed in this case; *Forsberg v. Always Consulting, Inc*., 06-CV-13488, 2008 WL 5449003, at *1 (S.D.N.Y. Dec. 31, 2008) (collecting cases treating summary judgment motion as motion to dismiss where no discovery exchanged); *Querim v. E.E.O.C.*, 111 F. Supp.2d 259, 263 (S.D.N.Y. 2000) (considering "only defendants' motions to dismiss, not their motions for summary judgment, because discovery has not been completed in this case").

### 2.    Propriety of Plaintiffs' Amended Complaint

Plaintiffs' filed their Amended Complaint in this action on May 21, 2007, before the Oswego County Defendants had filed an Answer, but after the Onondaga County Defendants filed their Answer on March 26, 2007.  (Dkt. Nos. 14, 21.)  Pursuant to the version of Fed. R. Civ. P. 15 in effect when Plaintiffs filed their Amended Complaint, once an Answer has been filed, a plaintiff may not file an Amended Complaint with regard to the party who answered

---

[14]    *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir. 1989) (citing *Burlington*, 769 F.2d at 926-27); *Young v. Corbin*, 889 F. Supp. 582, 584-85 (N.D.N.Y. 1995) (McAvoy, C.J.).

without first obtaining leave of the Court and/or the answering party's written consent.  *See* Fed. R. Civ. P. 15.

However, Plaintiffs failed to obtain the Court's leave and/or written consent from the Onondaga County Defendants before filing their Amended Complaint.  In addition, Plaintiffs failed to comply with Local Rule 7.1 of the Local Rules of Practice for this Court, which requires that a party moving to amend a pleading "set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means."  N.D.N.Y. L.R. 7.1(a)(4).  To make matters worse, both Plaintiffs' original Complaint and their Amended Complaint are hardly models of clarity, often repeating, inter-mingling and/or obliquely referencing theories of legal liability, and often omitting references to common law torts, state statutes, or constitutional rights.  As a result, it is not sufficiently clear what claims, if any, the Amended Complaint asserts against the Onondaga County Defendants that were not asserted against them in the original Complaint.

Under these circumstances, the Court would ordinarily decline to consider these "new" claims (to the extent they exist).  However, the Court is mindful of the complex nature of the briefing that has occurred thus far in this case, during which the Onondaga County Defendants have had an opportunity to challenge the pleading sufficiency of any new claims against them asserted in Plaintiffs' Amended Complaint.  (Dkt. No. 28, at 1; Dkt. No. 31.)  As a result, even assuming that some new claims are asserted in the Amended Complaint against the Onondaga County Defendants, the Court will, for the sake of simplicity to all, consider Plaintiffs' Amended Complaint as the operative Complaint against all Defendants.

B.    **Analysis of Pleading Sufficiency of Plaintiffs' Claims**

    1.    **Plaintiffs' First Cause of Action (Claiming that the Oswego County Defendants Breached Their Duty to Plaintiffs to Conduct a Careful Investigation Without Bias and Based Upon Credible Evidence)**

Even when construed with the utmost of special leniency, Plaintiffs' First Cause of Action fails to assert a claim upon which relief can be granted.  To the extent that Plaintiffs intend this Cause of Action to assert a claim arising under federal law, that claim is discussed below in Parts III.B.2. and III.B.5. of this Decision and Order.  Furthermore, to the extent that Plaintiffs intend this Cause of Action to assert a New York State common-law claim of defamation or abuse of process, that claim is discussed below in Part III.B.4. of this Decision and Order.  Remaining then is the possibility that Plaintiffs intend this Cause of Action to assert a New York State common-law claim of (1) breach of duty to conduct a careful investigation, or (2) malicious prosecution.[15]  Of course, the first such claim does not exist in New York.[16]  As for the second such claim, Plaintiffs have failed to plead facts plausibly suggesting three of the four

---

[15]    "The difference between the torts of abuse of process and malicious prosecution is that in a malicious prosecution claim the process is issued in bad faith and without probable cause, but the defendant intends to bring about the ordinary result of the process, while in an abuse of process claim, the issuance of process may be regular, valid, and lawful, but the person using the process is interested in only accomplishing some improper purpose that is collateral to the object of the process and which offends the spirit of the legal proceeding itself." 14 *N.Y. Prac., New York Law of Torts* § 1:86 (2009) [citation omitted].

[16]    *Cf. Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994) ("Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution.") [citations omitted]; *Palmer v. Monroe County Deputy Sheriff*, 00-CV-6370, 2004 WL 941784, at *7 (W.D.N.Y. Apr. 29, 2004) ("Plaintiff contends that the defendants owed her a duty of care with respect to their investigation of her alleged theft, and violated that duty by negligently investigating the alleged theft. There is no cause of action for negligent investigation under New York law, and therefore, plaintiff's cause of action is dismissed.") [citations omitted]. Plaintiffs appear to concede this point of law in their opposition memorandum of law, in which they argue that their First Cause of Action asserts a claim of malicious prosecution.  (*See* Dkt. No. 29, Attach. 1, at 3.)

elements necessary to state such a claim: (1) that the prior proceeding in question terminated in Plaintiffs' favor; (2) that the proceeding lacked probable cause; and (3) that the Oswego County Defendants possessed malice when they initiated the proceeding.

With regard to the first missing element, Plaintiffs chose (perhaps believing it would have undermined their other claims, such as their defamation claim) to not allege in their Amended Complaint that the report of inadequate guardianship against Plaintiff Kenific had later been "unfounded" by the New York State Department of Social Services in March of 2006. (*See generally* Dkt. No. 21.)[17] While record evidence of that expungement has been adduced in support of Defendants' alternative motion for summary judgment, the Court is precluded from considering that record evidence in deciding Defendants' motion to dismiss for failure to state a claim, because it was neither attached to, nor referenced in, Plaintiffs' Amended Complaint.

With regard to the second missing element, all that is needed to support a finding that a report of child abuse and neglect has been "indicated" in New York State is *some credible evidence*. *See* N.Y. Soc. Servs. Law § 412 ("An 'indicated report' means a report made pursuant to this title if an investigation determines that *some credible evidence* of the alleged abuse or maltreatment exists.") [emphasis added]. Such credible evidence may consist, in part or whole, of hearsay.[18] Here, Plaintiffs allege that the Oswego County Defendants found that the report in

---

[17]     Plaintiffs' sweeping allegations of error in the proceedings initiated by the Oswego County Defendants–e.g., that those Defendants' findings were "false" and "without any basis in fact"–are purely conclusory.

[18]     *See Bullock v. State Dept. of Soc. Servs.*, 669 N.Y.S.2d 618, 618 (N.Y. App. Div., 2d Dept. 1998) ("Petitioner's contention, that the [child-abuse-and-neglect] determination was based solely on inadmissible hearsay evidence, is without merit.  Hearsay is admissible in a[] [subsequent] administrative [expungement] hearing and, if sufficiently relevant and probative, hearsay alone may constitute substantial evidence.") [citations omitted]; *Vincent KK v. State of New York Office of Children and Family Servs.*, 725 N.Y.S.2d 766, 767 (N.Y. App. Div., 3d Dept. 2001) ("[P]etitioner challenges the fact that [the child-abuse-and-neglect] finding was

question was "indicated" based on hearsay allegations that Plaintiff Kenific was intoxicated and therefore incapable of providing adequate guardianship of his child.  (Dkt. No. 21, at ¶ 56.) While Plaintiffs allege *conclusorily* that those hearsay allegations were "false" and "without any basis in fact," Plaintiffs allege no *facts* plausibly suggesting those hearsay allegations were not credible such that they could constitute some credible evidence.  (*See generally* Dkt. No. 1.)[19]

With regard to the third missing element, Plaintiffs' Amended Complaint asserts only conclusory allegations of "bias," "gross neglig[ence]," "reckless indifference," and "deliberate" and "intentional[]" errors by the Oswego County Defendants.  In essence, Plaintiffs take two facts (i.e., that the Onondaga County Department of Social Services referred the matter in question to the Oswego County Department of Social Services due to an admitted conflict of interest, and that the Oswego County Department of Social Services subsequently notified Plaintiff Kenific that the report of inadequate guardianship by him had been "indicated" or "founded"), and–based solely on those two facts–make wild claims of collusion, bias, shoddy investigative work, hasty conclusions and deliberate wrongdoing by the Oswego County

_____

based almost exclusively upon hearsay evidence.  Suffice it to say that hearsay evidence is clearly admissible at . . . [post-determination] expungement hearings.") [citations omitted]. Indeed, hearsay may be relied on during a post-determination administrative appeal to support a finding of *substantial evidence*.  *See Saporito v. Carrion*, 886 N.Y.S.2d 635, 635 (N.Y. App. Div. 2d Dept. 2009) ("Hearsay is admissible in an administrative [expungement] hearing and, if sufficiently relevant and probative, hearsay alone may constitute substantial evidence.") [internal quotation marks and citations omitted]; *Ribya BB v. Wing*, 663 N.Y.S.2d 417, 419 (N.Y. App. Div., 3d Dept. 1997) ("[H]earsay is admissible in expungement hearings and, if sufficiently relevant and probative, may constitute substantial evidence to support the underlying determination.") [internal quotation marks and citations omitted].

[19]     The Court notes that, even if Plaintiffs had alleged facts plausibly suggesting that the report of inadequate guardianship by Plaintiff Kenific had later been "unfounded" by the New York State Department of Social Services in March of 2006, such a fact would plausibly suggest only that the hearsay allegations at issue did not constitute *substantial evidence* (the standard on administrative appeal)–it would not plausibly suggest anything about whether the hearsay allegations at issue constituted *some credible evidence*.

Department of Social Services.[20]   Simply stated, the former facts do not *plausibly* suggest the latter claims, but do so in only a speculative manner.  If anything, the fact that the Onondaga County Department of Social Services referred the matter in question to the Oswego County Department of Social Services due to an admitted conflict of interest (and the fact that the Oswego County Department of Social Services spent two months before finding that the report of abuse was "indicated") plausibly suggests professionalism by the former and independence by the latter.

In the alternative, the Court dismisses this claim as barred by the applicable statute of limitations, for the reasons stated by Defendants in their memoranda of law.  (Dkt. No. 19, Attach. 3, at 7-8, 21 [attaching pages "5," "6," and "19" of the Oswego County Defs.' Memo. of Law]; Dkt. No. 20, Attach 8, at 10, 15, 16 [attaching pages "7," "12" and "13" of the Onondaga County Defs.' Memo. of Law]; Dkt. No. 26, at 6 [attaching page "3" of the Oswego County Defs.' Am. Memo. of Law].)  As stated above in Part I.C. of this Decision and Order, Plaintiffs have chosen not to respond to this argument.  (*See generally* Dkt. No. 29, Attach. 1 [Plfs.' Memo of Law].)  After carefully considering this aspect of Defendants' unopposed motions, the Court is satisfied that Defendants have met their modest threshold burden of establishing entitlement to

---

[20]      The Court notes that, while Plaintiffs do not attach to their Amended Complaint the Oswego County Department of Social Services' letters to Plaintiffs dated November 30, 2005, they specifically reference those letters in their Amended Complaint.  Furthermore, the Oswego County Defendants provide a copy of those letters in their motion papers, and Plaintiffs do not challenge the accuracy of those copies in their motion papers.  Under such circumstances, the Court may, and does, rely on the letters of November 30, 2005, as being incorporated by reference into the body of Plaintiffs' Amended Complaint.  *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995); *Hardy v. Diaz*, 08-CV-1352, 2010 WL 1633379, at *3 (N.D.N.Y. March 30, 2010) (Baxter, M.J.); *Edward B. Beharry & Co., Ltd. v. Bedessee Imports,* 09-CV-0077, 2010 WL 1223590, at *6 (E.D.N.Y. March 23, 2010); Alessi v. Monroe County, 07-CV-6163, 2010 WL 161488, at *3 (W.D.N.Y. Jan. 13, 2010); *cf.* Fed. R. Civ. P. 10(c).

23

dismissal of this claim based on this ground.[21]  The Court notes that this aspect of Defendants'

motions would survive even the heightened scrutiny appropriate on a contested motion.

Finally, the Court also alternatively dismisses this claim based on the immunity afforded

to Defendants by New York Social Services Law § 419, for the reasons stated by the Oswego

County Defendants in their memoranda of law,[22] and also for the reason that the Court finds that

Plaintiffs have alleged no facts plausibly suggesting that Defendants did not act in good faith.

In so doing, the Court rejects Plaintiffs' argument that Section 419 protects only the reporters of

suspected child abuse, and not the investigators of such abuse.  (Dkt. No. 29, Attach. 1, at 3

[Plfs.' Memo. of Law].)  The case cited by Plaintiffs–*Doe v. County of Suffolk*–stands for a

proposition opposite to the proposition for which they cite it.  *See Doe v. County of Suffolk*, 494

F. Supp. 179, 182-83 (E.D.N.Y. 1980) (recognizing that Section 419 immunity applies to social

worker who had received and investigated a report of suspected child abuse).[23]

For each of these reasons, the Court dismisses Plaintiffs' First Cause of Action for failure

---

[21]      In this District, a movant's burden with regard to an unopposed motion is
lightened such that, in order to succeed, the movant need only show its entitlement to the relief
requested in its motion, which has appropriately been characterized as a "modest" burden.  *See*
N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines
that the moving party has met its burden to demonstrate entitlement to the relief requested
therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct.
30, 2009) (Suddaby, J.) (collecting cases).

[22]      (Dkt. No. 19, Attach. 3, at 9-11 [attaching pages "7," "8," and "9" of the Oswego
County Defs.' Memo. of Law]; Dkt. No. 26, at 6 [attaching page "3" of the Oswego County
Defs.' Am. Memo. of Law]; Dkt. No. 30, Attach 2, at 8-9 [attaching pages "4" and "5" of the
Oswego County Defs.' Reply Memo. of Law].)

[23]      *See also Mosher-Simmons v. County of Allegany*, 94-CV–0374, 1997 WL
662512, at *6 (W.D.N.Y. Oct. 8, 1997) ("The statutory immunity under the New York Social
Services Law is not limited to those making the initial report of child abuse, but also applies to
'those participating in a number of subsequent investigative and supportive activities mandated
by the statute.'") (quoting *William M. v. Laub*, 539 N.Y.S.2d 970, 971 [2d Dep't 1989]).

to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  Indeed, the Court finds that the claim asserted in this Cause of Action is so without an arguable basis in fact or law as to be frivolous.

2. **Plaintiffs' Second Cause of Action (Claiming that All Defendants Denied Plaintiffs Their Right to Substantive and Procedural Due Process Under Fourteenth Amendment)**

a. **Claim of Denial of Right to Substantive Due Process Through Unconstitutional Investigation and Interference with Right to Raise Child Without Governmental Interference**

"It has long been settled in this Circuit that a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection." *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999) [internal quotation marks and citation omitted]).[24]  "To prevail on a claim that this right has been violated, plaintiffs must demonstrate that the government action was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Sutton v. Tompkins County*, 617 F. Supp.2d 84, 93 (N.D.N.Y. 2007) (Mordue, C.J.) [internal quotation marks and citation omitted]).

"In applying the 'conscience-shocking' standard in the context of child abuse investigations and findings of abuse by state actors, courts have observed that parents' interest in family integrity is 'counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'" *Sutton*, 617 F. Supp.2d at 93 [internal quotation marks and

---

[24]    *See also Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (noting that a family has, "in general terms, a substantive right under the Due Process Clause 'to remain together without the coercive interference of the awesome power of the state'").

citation omitted]).[25]  However, "[t]his competing interest, though compelling, is not so compelling as to derogate a parent's constitutional rights completely." *Russell*, 182 F.3d at 104. "The difficulty of balancing the weighty interests apparent in the abuse context . . . has prompted courts to impose few concrete restrictions on case workers, in exercising their discretion, short of these obvious extremes." *Id*.

"This Circuit has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context." *Id*.  "An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse." *Id*. [citation omitted].  "In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between 'difficult alternatives' often need to be made on the basis of limited or conflicting information." *Id*. at 105 [citation omitted]. "[A] mere failure to meet local or professional standards, without more, should not generally be elevated to the status of constitutional violation." *Id*. at 106 [citation omitted].  "As a result, even a faulty investigation does not necessarily rise to the level of an unconstitutional investigation." *Id*.

This conscious-shocking requirement constitutes one of the elements necessary to state a claim for a violation of the Fourteenth Amendment under 42 U.S.C. § 1983.  Among the other elements (which include the fact that the defendants were acting under the color of state law and the fact that defendants' conduct caused an injury to the plaintiff) is the requirement that, when they acted, defendants possessed a state of mind more blameworthy than carelessness or

---

[25]    *See also Shapiro v. Kronfeld*, 00-CV-6286, 2004 WL 2698889, at *12 (S.D.N.Y. Nov.24, 2004) (noting that "[t]he right to family integrity does not include a constitutional right to be free from child abuse investigations").

negligence.[26]  Specifically, Defendants must have possessed a state of mind that rose to the level

of intent or deliberate indifference–a state of mind akin to *criminal recklessness*.[27]

Here, even when construed with the utmost of special leniency, Plaintiffs' substantive

due process claim fails to assert a claim upon which relief can be granted.  More specifically,

Plaintiffs have failed to plead facts plausibly suggesting two of the elements necessary to state

such a claim: (1) that Defendants' investigation and/or finding of abuse and neglect was so

lacking in a reasonable basis as to be so conscious-shocking, arbitrary, or egregious; and (2) that

---

[26]     *See Daniels v. Williams*, 474 U.S. 327, 331-35 (1986) (acknowledging that "injuries inflicted by governmental negligence are not addressed by the United States Constitution" and rejecting Section 1983 claim under Fourteenth Amendment based on alleged negligence); *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) ("[T]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property . . . ."); *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) ("In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' . . .  [T]he Fourteenth Amendment is not a 'font of tort law.' . . .  It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable. . . .  '[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process.'") [citations omitted]; *Riddick v. Modeny*, 250 F. App'x 482, 483 (3d Cir. 2007) ("The protections afforded prisoners by the Due Process Clause of the Fourteenth Amendment are not triggered by the mere negligence of prison officials.").

[27]     *Farmer v. Brennan,* 511 U.S. 825, 827 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *accord, Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept. 26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *15, n.124 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10, n.59 (N.D.N.Y. Sept. 29, 2006) (Kahn, J.).

Defendants possessed the requisite mental state–akin to criminal recklessness–when they conducted their investigation and/or rendered their finding of abuse and neglect.

With regard to the first missing element (i.e., that Defendants' investigation and/or finding of abuse and neglect was so lacking in a reasonable basis as to be so conscious-shocking, arbitrary, or egregious), contrary to pleading facts plausibly suggesting the absence of a reasonable basis for Defendants' investigation and/or finding of abuse, Plaintiffs' Amended Complaint actually pleads facts plausibly suggesting that Defendants' investigation and finding of abuse were supported by a reasonable basis.  Specifically, as stated above in Part III.B.1. of this Decision and Order, Plaintiffs allege that the Oswego County Defendants found that the report in question was "indicated" based on hearsay allegations that Plaintiff Kenific was intoxicated and therefore incapable of providing adequate guardianship of his child.  (Dkt. No. 21, at ¶ 56.)  Hearsay may constitute the credible evidence required to support a finding that a report of child abuse and neglect was "indicated" pursuant to N.Y. Soc. Servs. Law § 412–as long as the hearsay is *credible*.  While Plaintiffs allege *conclusorily* that those hearsay allegations were "false" and "without any basis in fact," Plaintiffs allege no *facts* plausibly suggesting those hearsay allegations were not credible.  (*See generally* Dkt. No. 1.)

Similarly, Plaintiffs have alleged no facts plausibly suggesting that one or more of the Defendants removed Plaintiff Kenific's child from his custody.  (*See generally* Dkt. No. 21.)  The closest Plaintiffs come to making such a factual allegation is when they allege (vaguely) that one or more unidentified Defendants (1) "threaten[ed] [Plaintiff Kenific] with criminal charges if he did not relinquish custody of said child," and (2) "interfere[d] with [the psychiatric treatment and care of Defendant Kenific's child]."  (*Id.* at ¶¶ 32, 41.)  With regard to the first allegation, to the extent Plaintiff Kenific implies that the threat was communicated through the Oswego

County Department of Social Services' letter to Plaintiff Kenific of November 30, 2005, the Court finds that the letter in fact contains no such threat. (*Id*. at ¶ 32; Dkt. No. 19, Attach. 2, at 13-14 [Ex. C to Haynes Affid.].)  Moreover, to the extent Plaintiff Kenific implies that the threat was communicated at some other time, no facts are alleged plausibly suggesting (1) when, where, how and by whom the threat was made, (2) that the threat was of such a nature, and/or was made in such a way, as to chill the rights of a reasonable person in Plaintiff Kenific's situation, and/or (3) that the threat ever caused Plaintiff Kenific to relinquish custody of his child.  (*See generally* Dkt. No. 21.)  With regard to the second allegation, no facts are alleged plausibly suggesting that Defendants' alleged interference consisted (in whole or in part) of their removing Plaintiff Kenific's child from his custody.  (*Id*.)

For these reasons, the Court relies on the analogous case of *Daniels v. Murphy*, 06-CV-5841, 2007 WL 1965303, at *4 (E.D.N.Y. July 2, 2007) (dismissing both plaintiff's substantive due process claim and his procedural due process claim because he did not allege that a state actor removed a child from his custody) [internal quotation marks and citations omitted]. Moreover, the Court finds distinguishable the case of *Southerland v. Giuliani*, which involved a situation in which a municipal agency had seized the plaintiff's children without providing a proper hearing and without a reasonable basis for the seizure.  *Southerland v. Giuliani*, 4 F. App'x 33, 36 (2d Cir. 2001).[28]

With regard to the second missing element (i.e., that Defendants possessed the requisite mental state–akin to criminal recklessness–when they conducted their investigation and/or

---

[28]      The Court notes that, even if *Southerland* were factually analogous to the current case, the Court would not rely on it for two reasons: (1) it was issued in an unpublished decision before January 1, 2007, and thus may not be relied upon for precedential value; (2) it was issued before the Supreme Court clarified the fair-notice pleading standard in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007), on May 21, 2007.

rendered their finding of abuse and neglect), the Court finds that Plaintiffs' Amended Complaint fails to allege facts plausibly suggesting that Defendants acted with the sort of criminal recklessness or intent necessary for them to incur liability under 42 U.S.C. § 1983 and the Fourteenth Amendment, for reasons similar to those identified by the Court above at the end of Part III.B.1. of this Decision and Order.

For each of these reasons, the Court dismisses Plaintiffs' substantive due process claim for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

> **b.      Claim of Denial of Right to Procedural Due Process Through Violation of Right to Not Have Name and Reputation Harmed by False Report**

The Supreme Court has stated that procedural due process claims are to be examined "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) [citations omitted].

With regard to the first step (i.e., whether there exists a liberty or property interest which has been interfered with by the State), the Supreme Court has held that damage to a person's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 711-12 (1976). Rather, the Supreme Court has held, loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest. *Paul*, 424 U.S. at 711-12. The Second Circuit has interpreted this holding to mean that "stigma plus" is required to establish such a constitutional deprivation. *See Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994); *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir.), *cert. denied*, 493 U.S. 816 (1989).

As the Second Circuit has noted, "it is not entirely clear what the 'plus' is." *Valmonte*,
18 F.3d at 1000 (citing *Neu*, 869 F.2d at 667).  The Second Circuit has held that such a "plus"
includes (1) one's deprivation of a property interest,[29] (2) one's termination from governmental
employment,[30] (3) one's termination from quasi-governmental employment,[31] and (4) one's
inability to obtain a job with a child-care provider in New York State, who must (by operation of
law) consult the New York State Central Register of Child Abuse and Maltreatment and, if an
applicant's name is on that list, explain in writing the reasons that the provider is hiring the
applicant.[32]  As for what other tangible element constitutes such a "plus," the Second Circuit has
explained that the tangible element must consist of "a deprivation of some . . . legal right or
status." *Valmonte,* 18 F.3d at 1000 (citing *Neu*, 869 F.2d at 667).[33]  While the precise scope of

---

[29]     *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004); *Greenwood v. New
York, Office of Mental Health*, 163 F.3d 119, 124 (2d Cir. 1998) (citations omitted).

[30]     *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004); *Valmonte*, 18 F.3d at
1000 (citing *Neu*, 869 F.2d at 667).

[31]     *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 442-46 (2d Cir.
1980) (ruling that "plus" included termination from quasi-governmental employment); *cf.
Abramson v. Pataki*, 278 F.3d 93, 103 (2d Cir. 2002) (rejecting argument that "plus" included
failure to *obtain* quasi-governmental employment); *Walentias v. Lipper*, 862 F.2d 414, 420-21
(2d Cir. 1988) (ruling that it was not clearly established in 1984 that "plus" included failure to
*obtain* governmental employment).

[32]     *Valmonte*, 18 F.3d at 1001 (citing *Neu*, 869 F.2d at 667).

[33]     *See also Sadallah*, 383 F.3d at 38 ("To prevail on a stigma plus claim, a plaintiff
must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation,
that is capable of being proved false, and that he or she claims is false, and (2) a material
state-imposed burden or state-imposed alteration of the plaintiff's status or rights. . . .  The
state-imposed burden or alteration of status must be "in addition to the stigmatizing statement.")
(internal quotation marks and citations omitted), *Woe v. Spitzer*, 571 F. Supp.2d 382, 387
(E.D.N.Y. 2008) ("[T]o show a liberty interest, Plaintiff must show more than the stigma
attached to his inclusion on the sex offender registry.  Specifically, he must show what has been
referred to as 'stigma plus,' *i.e.*, stigma accompanied by the potential loss of rights under law.")
(citation omitted).

the term "some legal rights or status" remains somewhat unclear, it is clear that the term does not include the "deleterious effects" that normally flow from a sullied reputation, such as "the impact that defamation might have on [other] job prospects, . . . romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." *Id*. at 1001.[34]

Here, Plaintiffs do not allege facts plausibly suggesting what "legal right or status" they were deprived of (other than the right to not suffer defamation and the deleterious effects normally flowing from it) necessary to confer on them a liberty interest protected by the Fourteenth Amendment Procedural Due Process Clause.  (Dkt. No. 21, ¶¶ 29-36.)  For example, Plaintiffs allege no facts plausibly suggesting that either Plaintiff was terminated from, or failed to obtain, employment.  (*See generally* Dkt. No. 21.)  Rather, Plaintiffs allege–vaguely and conclusorily–only that Defendants' defamation of Plaintiff Kenific "interfered with and deprived him of the right to raise his child and family relations."  (*Id*. at ¶ 32.)  However, Plaintiffs allege no *facts* plausibly suggesting how the interference did this, for example, by causing Plaintiff Kenific to lose custody of his child.  (*See generally* Dkt. No. 21.)  Indeed, the facts alleged by Plaintiffs plausibly suggest that the "interference" consisted only of "psychological harm, stress and anxiety, headaches, stomach aches, fear and dread, [and] damages to name and reputation." (*Id*. at ¶¶ 27, 48.)  This is not sufficient.  *Valmonte*, 18 F.3d at 1001.

In any event, even if Plaintiffs have alleged facts plausibly suggesting what "legal right or status" they were deprived of (other than the right to not suffer defamation and the deleterious effects normally flowing from it), the Court would find that Plaintiffs have failed to allege facts plausibly suggesting that they enjoyed a protected liberty interest under the circumstances.  This

---

[34]    *See also Sadallah*, 383 F.3d at 38 ("[D]eleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine.") (internal quotation marks and citation omitted).

is because, generally, to do so, a plaintiff must allege facts plausibly suggesting the following:

(1) a stigmatizing statement (i.e., a statement that is sufficiently derogatory to injure the

plaintiff's reputation, that is capable of being proved false, and that he or she claims is false); (2)

*the public dissemination of the stigmatizing statement*; and (3) a resulting tangible and material

state-imposed deprivation or alteration of some legal right or status possessed by plaintiff (other

than the right to not suffer defamation and the deleterious effects normally flowing from it).

*Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (citations omitted) [emphasis added].  Here,

Plaintiffs do not allege facts plausibly suggesting that any stigmatizing statement was publicly

disseminated by Defendants.  Rather, Plaintiffs allege merely that, "[U]pon information and

belief, [the Oswego County Department of Social Services' letters to Plaintiffs dated November

30, 2005] have been viewed and will be viewed and relayed to other persons further defaming

the Plaintiffs. . . . [U]pon information and belief, [Defendants] will further disseminate [the

statements in the letters] to third parties . . . ."  (Dkt. No. 21, at ¶¶ 47, 48.)  This sort of

speculative allegation is not sufficient to render Plaintiffs' procedural due process claim

plausible–especially given the fact that the letters in question (which are incorporated by

reference into Plaintiffs' Amended Complaint) expressly state that the information regarding the

report of abuse is subject to several confidentiality restrictions.  (Dkt. No. 19, Attach. 2, at 13-14

[Ex. C to Haynes Affid.].)[35]

Finally, even if Plaintiffs have alleged that they enjoyed a liberty interest that was

interfered with by Defendants (thus satisfying the first step of stating a procedural due process

claim), the Court would find that they have not satisfied the second step of stating such a claim

---

[35]     *See Gentile v. Wallen*, 562 F.2d 193, 197-98 (2d Cir. 1977) (recognizing distinction between "publication" and "confidential communication with an authorized governmental agency").

(i.e., alleging facts plausibly suggesting that the procedures attendant upon that deprivation were constitutionally insufficient).  This is because Plaintiffs allege no facts plausibly suggesting what procedural protections they were, or were not, afforded before they experienced the added tangible effect discussed above.  The Court suspects this is true because, had they done so, Plaintiffs would have had to acknowledge that the report of inadequate guardianship by Plaintiff Kenific was later "unfounded" by the New York State Department of Social Services in March of 2006, suggesting that they were, in fact, afforded sufficient procedural protections.  In any event, the reason for Plaintiffs' decision does not matter: their procedural due process claim, as articulated, is non-actionable.

For each of these reasons, the Court dismisses Plaintiffs' procedural due process claim for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

> **3.     Plaintiffs' Third Cause of Action (Claiming that the Oswego County Defendants Conspired with One Another to Violate Plaintiffs' Due Process Rights)**

In their Amended Complaint, Plaintiffs do not allege facts plausibly suggesting whether they base their conspiracy claim on 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3).  (Dkt. No. 21, ¶¶ 37-43.)  To the extent that Plaintiffs' base their conspiracy claim on 42 U.S.C. § 1985(3), that claim is dismissed: Plaintiffs have not set forth even conclusory allegations of racial or other invidious class-based animus prohibited by Section 1985(c), let alone any factual allegations plausibly suggesting such a claim.  *Hernandez v. Goord*, 312 F. Supp.2d 537, 545, n.4 (S.D.N.Y. 2004) (citing *United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 [1983]).

To the extent that Plaintiffs' base their conspiracy claim on 42 U.S.C. § 1983, Defendants have advanced legal arguments in support of their request for dismissal of this claim.  (Dkt. No.

19, Attach. 3 at 19-20 [attaching pages "17" and "18" of Oswego County Defs.' Memo. of Law];

Dkt. No. 20, Attach. 8 at 7, 12, 17 [attaching pages "4," "9," and "17" of Onondaga County

Defs.' Memo. of Law].)  Furthermore, as stated above in Part I.C. of this Decision and Order,

Plaintiffs have chosen not to respond to that argument.  (*See generally* Dkt. No. 29, Attach. 1

[Plfs.' Memo of Law].)  After carefully considering this aspect of Defendants' unopposed

motions, the Court is satisfied that Defendants have met their modest threshold burden of

establishing entitlement to dismissal of Plaintiffs' conspiracy claim based on this ground.[36]  The

Court notes that this aspect of Defendants' motions would survive even the heightened scrutiny

appropriate on a contested motion.

   In order to survive a motion to dismiss his Section 1983 conspiracy claim, a plaintiff

must allege facts plausibly suggesting the following three elements: (1) an agreement between

two or more state actors; (2) to act in concert to inflict an unconstitutional injury; and (3) an

overt act done in furtherance of that goal causing damages.  *Hernandez*, 312 F. Supp.2d at 545-

46 (citation omitted).  A claim that fails to allege such facts fails as a matter of law.  *See, e.g.,*

*Fisk v. Letterman*, 401 F. Supp.2d 362, 376 (S.D.N.Y. 2005) (noting that "[a] plaintiff is not

required to list the place and date of defendants meetings and the summary of their conversations

when he pleads conspiracy, . . . but the pleadings must present facts tending to show agreement

and concerted action") (internal quotation marks and citations omitted).

   Here, in asserting their conspiracy claim, Plaintiffs allege as follows: (1) "[t]he

Defendants Oswego County Social Services and their agents did conspire to deprive the

Plaintiffs of their rights under the United States Constitution by relying upon and using false

information provided by the Onondaga County Department of Social Services and their agents,

---

[36]        *See, supra*, note 21 of this Decision and Order.

in attempting to and in fact depriving the Plaintiffs of their rights under the Fourteenth

Amendment . . .”; (2) “[t]he Defendants and their agents knew or should have known that the

Onondaga County Department of Social Services had a bias and conflict which interfered with

their professional capacity to conduct and/or provide information for an investigation into

allegations of child abuse”; (3) “[i]n spite of such knowledge, the Defendants relied upon,

shared, and otherwise exploited false information to the detriment of the Plaintiffs and in making

pre-judgments and failing to conduct an investigation free of gross negligence and reckless

disregard concerning the allegations as made by the infant child and/or the infant child’s mother,

an employee of . . . the Onondaga County Department of Social Services”; (4) “[t]he Defendants

knew or should have known the infant child was under the care of a psychiatrist and that he was

admitted to CPEP by Plaintiff for treatment and care”; (5) “[t]he Defendants conspired to and did

interfere with [the infant child’s psychiatric] treatment and care [at CPEP] as deemed necessary

by the Plaintiff Robert Kenific, Jr. in violation of his rights as a parent . . . .”; and (6) “[b]y

providing and relying upon false and contrived information, the Defendants agreed to reach a

finding of indicated abuse prior to completion of their ‘investigation.’”  (Dkt. No. 21, at ¶¶ 38-

42.)

　　　　As alleged, these facts do not *plausibly* suggest either (1) an agreement between two or

more of the Oswego County Defendants or (2) a concerted act by the Oswego County

Defendants to act to inflict an unconstitutional injury.  Even when construed with the utmost of

special leniency, Plaintiffs’ Amended Complaint alleges (speculatively) only that the Oswego

County Defendants *must have* reached an agreement because (1) they received some sort of

“false information” provided by the Onondaga County Department of Social Services, (2) they

knew “or should have known” that the Onondaga County Department of Social Services was

plagued by a conflict of interest, and (3) based on the false information they received, they incorrectly found that the report of abuse was "indicated."

Moreover, the Amended Complaint also alleges the following facts: (1) the Onondaga County Department of Social Services referred the matter in question to the Oswego County Department of Social Services once the Onondaga County Department of Social Services learned of the alleged conflict of interest; and (2) the Oswego County Department of Social Services issued its finding that the report of abuse and neglect was "indicated" more than two months after being referred the matter in question, during which time it (purportedly) conducted an investigation.  (Dkt. No. 21, ¶¶ 19, 21;  Dkt. No. 19, Attach. 2, at 13-14 [Ex. C to Haynes Affid., incorporated by reference into Plfs.' Am. Compl.].)  Finally, to the extent that the "false information" received by the Oswego County Department of Social Services was information that Plaintiff Kenific was, at some point, intoxicated such that he was incapable of providing adequate guardianship of his child, no facts are alleged plausibly suggesting that the Department knew or reasonably should have known that the information–which came from a non-party–was not credible.  (*See* Dkt. No. 21, ¶¶ 56-60.)

As a result, the facts alleged by Plaintiffs are far more consistent with innocent error as they are with intentional error, much less an agreement and concerted action to commit such an error.  For these reasons, the Court dismisses Plaintiffs' Third Cause of Action for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

        **4.**        **Plaintiffs' Fourth Cause of Action (Claiming that Defendants Committed Defamation and Abuse of Process Against Plaintiffs)**

In the interest of much-needed brevity, the Court will not recite the well-known elements of the New York State torts of defamation and abuse of process, and explain in detail the many

ways Plaintiffs' Amended Complaint fails to allege facts plausibly suggesting those elements. Rather, the Court will simply note that, for the reasons set forth above in Parts III.B.1. and III.B.2.b. of this Decision and Order, the Court finds that Plaintiffs have not alleged facts plausibly suggesting that either (1) the statement in question (i.e., that the report of abuse by Plaintiff Kenific had been found to be "indicated") was in fact false, or (2) Defendants published that statement to a third party.  Moreover, for the reasons set forth above in Part and III.B.1. of this Decision and Order, the Court finds that Plaintiffs have not alleged facts plausibly suggesting that either (1) Defendants acted with an intent to do harm without excuse or justification, or (2) Defendants used the process in a perverted manner to obtain a collateral objective.

In the alternative, the Court dismisses this claim as barred by the applicable statute of limitations, for the reasons stated by Defendants in their memoranda of law.  (Dkt. No. 19, Attach. 3, at 7-8, 21 [attaching pages "5," "6," and "19" of the Oswego County Defs.' Memo. of Law]; Dkt. No. 20, Attach 8, at 10, 15, 16 [attaching pages "7," "12" and "13" of the Onondaga County Defs.' Memo. of Law]; Dkt. No. 26, at 10 [attaching page "7" of the Oswego County Defs.' Am. Memo. of Law].)  As stated above in Part I.C. of this Decision and Order, Plaintiffs have chosen not to respond to this argument.  (*See generally* Dkt. No. 29, Attach. 1 [Plfs.' Memo of Law].)  After carefully considering this aspect of Defendants' unopposed motions, the Court is satisfied that Defendants have met their modest threshold burden of establishing entitlement to dismissal of this claim based on this ground.[37]  The Court notes that this aspect of Defendants' motions would survive even the heightened scrutiny appropriate on a contested motion.

---

[37]        *See*, *supra*, note 21 of this Decision and Order.

Finally, the Court also alternatively dismisses this claim based on the immunity afforded to Defendants by New York Social Services Law § 419, for the reasons stated by the Oswego County Defendants in their memoranda of law,[38] and also for the reason that the Court finds that Plaintiffs have alleged no facts plausibly suggesting that Defendants did not act in good faith.

For each of these reasons, the Court dismisses Plaintiffs' Fourth Cause of Action for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### 5.     Plaintiffs' Fifth Cause of Action (Claiming that the Oswego County Defendants Violated Plaintiff Kenific's Right to Equal Protection)

The Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws" (*see* U.S. Const. amend. XIV, § 1), "requires the government to treat all similarly situated individuals alike." *Young v. Suffolk County*, 09-CV-3325, 2010 WL 1424008, at *16 (E.D.N.Y. Apr. 9, 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 [1985]).

Ordinarily, "[t]o state a claim for an equal protection violation, [plaintiffs] must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender." *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).  However, "an individual not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim under the 'class of one' theory recognized by the Supreme Court in *Willowbrook v. Olech*, 528 U.S. 562 (2000)." *Young*, 2010 WL 1424008, at *16.

---

[38]     *See*, *supra*, Part III.B.1. of this Decision and Order.

"Under a 'class of one' equal protection claim, a plaintiff must allege that (1) '[she] has been intentionally treated differently from others similarly situated' and (2) 'there is no rational basis for the difference in treatment.'" *Id*. (quoting *Willowbrook*, 528 U.S. at 564). "In order to state an equal protection violation under § 1983, 'it is axiomatic that plaintiff must allege that similarly situated persons were treated differently.'" *Id*. (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 [2d Cir. 1994]).

Here, Defendants argue, in their memoranda of law, that this claim should be dismissed because it fails to allege facts plausibly suggesting that the different treatment they allegedly received (as compared to others who have been investigated for suspected child abuse or neglect) was motivated by any improper considerations or maliciousness, rather that being motivated by a legitimate basis. (Dkt. No. 26, at 10-12 [attaching pages "7," "8" and "9" of the Oswego County Defs.' Am. Memo. of Law]; Dkt. No. 28, at 1 [letter brief from Onondaga County Defs. adopting by reference the Oswego County Defendants' legal arguments].)  In so arguing, Defendants point out, *inter alia*, that Plaintiffs have alleged that the purported reason for Plaintiff Kenific's disparate treatment was a municipal policy encouraging the reliance on hearsay reports of intoxication. (Dkt. No. 26, at 11-12 [attaching pages "8" and "9" of the Oswego County Defs.' Am. Memo. of Law].)  As stated above in Part I.C. of this Decision and Order, Plaintiffs have chosen not to respond to this argument.  (*See generally* Dkt. No. 29, Attach. 1 [Plfs.' Memo of Law].)  After carefully considering this aspect of Defendants' unopposed motions, the Court is satisfied that Defendants have met their modest threshold burden of establishing entitlement to dismissal of this claim based on this ground.[39]  The Court notes that this aspect of Defendants' motions would survive even the heightened scrutiny appropriate on a contested motion.

---

[39]        *See*, *supra*, note 21 of this Decision and Order.

This is because Plaintiffs' Amended Complaint does not allege facts plausibly suggesting that Plaintiff Kenific experienced invidious discrimination because of his race, national origin or gender.  (*See generally* Dkt. No. 21.)  Moreover, the Court finds that the Amended Complaint alleges only conclusorily that the different treatment Plaintiff Kenific allegedly received (1) was maliciously intended to inhibit or punish his exercise of the constitutional rights he possessed with regard to his child, or (2) lacked any rational basis.  (*Id*. at ¶ 52.)  The Court makes this finding for the reasons stated above in Parts III.B.1., III.B.2.a. and III.B.3. of this Decision and Order.  In the interest of brevity, the Court will not repeat each of those reasons here, but will only highlight two of them.

First, the Court finds that Plaintiffs' malicious-intent allegation is insufficient because it is purely speculative in nature, and is indeed undermined by their other allegations, which plausibly suggest that the Oswego County Defendants acted in an independent and dutiful manner.  Second, the Court finds that Plaintiffs' irrational-basis allegation is insufficient because it is bereft of supporting factual allegations, and is indeed undermined by (1) their allegation that the Oswego County Defendants made a finding of abuse and/or neglect against Plaintiff Kenific based upon a hearsay report of his intoxication (which may be sufficient to support a finding that a report of child abuse and neglect was "indicated" pursuant to N.Y. Soc. Servs. Law § 412), and (2) the fact that Plaintiffs have conspicuously omitted from their Amended Complaint an allegation that the New York State Department of Social Services expunged the Oswego County Department of Social Services' finding that the report of abuse and neglect was "indicated."

For each of these reasons, the Court dismisses Plaintiffs' Fifth Cause of Action for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

      **6.**     **Plaintiffs' Sixth Cause of Action (Claiming that Defendant Oswego County and Defendant Oswego County Department of Social Services Are Liable for the Unconstitutional Acts of Their Employees Based on the Existence of an Offending Municipal Custom, Policy or Practice)**

As an initial matter, the Court notes that Defendants argue, in their memoranda of law, that both the Oswego County Department of Social Services and the Onondaga County Department of Social Services should be dismissed from this action as Defendants because those agencies are merely administrative arms of municipal entities (i.e., Oswego and Onondaga Counties), and thus lack any capacity to be sued independently from those municipal entities, under 42 U.S.C. § 1983.  (Dkt. No. 19, Attach. 3, at 11 [attaching page "9" of the Oswego County Defs.' Memo. of Law]; Dkt. No. 20, Attach 8, at 24-25 [attaching pages "21" and "22" of the Onondaga County Defs.' Memo. of Law].)  As stated above in Part I.C. of this Decision and Order, Plaintiffs have chosen not to respond to this argument.  (*See generally* Dkt. No. 29, Attach. 1 [Plfs.' Memo of Law].)  After carefully considering this aspect of Defendants' unopposed motions, the Court is satisfied that Defendants have met their modest threshold burden of establishing entitlement to dismissal of this claim based on this ground.  The Court notes that this aspect of Defendants' motions would survive even the heightened scrutiny appropriate on a contested motion.[40]  As a result, to the extent that the claims against them have not already been dismissed for the reasons stated above in this Decision and Order, the Oswego County Department of Social Services and the Onondaga County Department of Social Services are dismissed from this action as Defendants.

---

[40]     *See Crews v. County of Nassau*, 06-CV-2610, 2007 WL 4591325, at *1, n.1 (E.D.N.Y. Dec. 27, 2007); *accord, Caidor v. M & T Bank*, 05-CV-0297, 2006 WL 839547, at *2 (N.D.N.Y. March 27, 2006) (Scullin, J.), *Hoisington v. County of Sullivan*, 55 F. Supp.2d 212, 214 (S.D.N.Y. 1999).

Turning to Plaintiffs' claim that Oswego County is subject to municipal liability for the unconstitutional acts of its employees, municipal liability "cannot result from a theory of respondeat superior; rather, it can be imposed only if the acts in question were carried out in 'execution of a government's policy or custom.'" *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 [1978]).  "Although this rule 'does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (citation omitted).  Therefore, "when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).  The subordinates' conduct may be attributed to the actions or omissions of higher ranking officials with policymaking authority when the plaintiff establishes either (1) "that a policymaker ordered or ratified the subordinates' actions," or (2) "that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Amnesty*, 361 F.3d at 126 (citations omitted).

Of course, a policy or custom may relate to improper training.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  However, "[a] claim for failure to train will trigger municipal liability only where 'the failure to train amounts to deliberate indifference to the rights' of those with whom the state officials will come into contact." *Young v. County of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998) (quoting *City of Canton*, 489 U.S. at 388).  In *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), the Second Circuit listed "three showings" required to support a

43

claim that a municipality's failure to train amounted to *deliberate indifference* of the rights of citizens:

> (1) that "a policymaker [of the municipality] knows to a moral certainty that [its] employees will confront a given situation'; (2) that 'the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'; and (3) that 'the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.'

*Young*, 160 F.3d at 905 (quoting *Walker*, 974 F.2d at 297-98 [citation omitted]).  "Under the *Walker* test, a claim for failure to train cannot be sustained unless the employees violated a clearly established federal constitutional right."  *Id.* (citation omitted).

Here, the Oswego County Defendants argue, in their memoranda of law, that this claim should be dismissed because (1) Plaintiffs have failed to allege facts plausibly suggesting that there was a constitutional violation committed by an employee of Oswego County, and (2) in any event, Plaintiffs have failed to allege facts plausibly suggesting that any such violation was carried out in execution of a County policy, custom or practice.  (Dkt. No. 19, Attach. 3, at 12-19 [attaching pages "10" through "17" of the Oswego County Defs.' Memo. of Law]; Dkt. No. 26, at 12 [attaching page "9" of the Oswego County Defs.' Am. Memo. of Law].)  As stated above in Part I.C. of this Decision and Order, Plaintiffs have chosen not to respond to this argument.  (*See generally* Dkt. No. 29, Attach. 1 [Plfs.' Memo of Law].)  After carefully considering this aspect of Defendants' unopposed motions, the Court is satisfied that Defendants have met their modest threshold burden of establishing entitlement to dismissal of this claim based on this ground.[41] The Court notes that this aspect of Defendants' motions would survive even the heightened scrutiny appropriate on a contested motion.

---

[41]        *See*, *supra*, note 21 of this Decision and Order.

More specifically, the Court finds that, as an initial matter, Plaintiffs' Amended Complaint fails to allege facts plausibly suggesting that there was a constitutional violation committed by an employee of Oswego County, for the reasons set forth above in Parts III.B.2., III.B.3., and III.B.5. of this Decision and Order.  Again, it may be permissible to rely on a hearsay report of intoxication in finding a report of abuse and neglect "indicated."  (The issue is whether the hearsay report of intoxication is credible.)

In any event, the Court finds that, even if Plaintiffs have alleged facts plausibly suggesting that an unconstitutional violation occurred, Plaintiffs have failed to allege facts plausibly suggesting that any such violation was carried out in execution of a County policy, custom or practice.  Rather, Plaintiffs' Amended Complaint alleges, in pertinent part, as follows: (1) "Defendant[] Oswego County . . . and their employees made a finding of abuse and/or neglect against Robert Kenific, Jr. based upon hearsay allegations without any basis in fact that he was intoxicated and therefore incapable of providing adequate guardianship of his child"; (2) "Defendant[] Oswego County . . . has a custom, policy or practice of making findings of abuse and/or neglect against parents or child custodians upon hearsay allegations of intoxication"; (3) "[s]uch policy, custom or practice is without legitimate basis in fact and subjects persons to deprivation and/or risk of deprivation of familial rights without any basis in fact or law"; (4) "[s]uch policy, custom and practice is without legitimate basis and is made regardless of injury or harm and/or without evidence of injury or harm to the subject child/children"; and (5) "[b]ecause of the custom, policy and practice of . . . Oswego County . . . to make such findings of abuse and/or neglect, the Plaintiff [was] harmed and injured . . . ."  (Dkt. No. 21, at ¶¶ 56-60.)

These allegations set forth no facts plausibly suggesting that an Oswego County policymaker conducted, ordered, ratified or turned a blind eye to the alleged constitutional violation.  To the contrary, Plaintiffs allege facts plausibly suggesting the occurrence of a single incident carried out by one or more individuals below the policy-making level.  Such allegations are insufficient to make out a claim of municipal liability.[42]

For each of these reasons, the Court dismisses from this action the Oswego County Department of Social Services and the Onondaga County Department of Social Services as Defendants, for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  In addition, the Court dismisses the remainder of Plaintiffs' Sixth Cause of Action for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

---

[42]     *See Pierce v. Chautauqua County*, 06-CV-0644, 2007 WL 2902954, at *8 (W.D.N.Y. Sept. 28, 2007) (dismissing plaintiffs' *Monell* claim that "Sheriff Gerace and/or Chautuaqua County 'have a municipal policy or custom allowing its officers to act on complaints with no background check, inquiry into the source of the complaint, or without proper investigation whatsoever to justify the degree of force displayed by deputies Ottoway and Beichner on November 25, 2005' [because] . . .  plaintiffs' amended complaint contains no factual allegations which support an inference of such a policy other than the events which took place at plaintiffs' residence on November 25, 2005"); *Murray v. Admin. for Children's Servs.*, 476 F. Supp.2d 436, 442 (S.D.N.Y. 2007) ("The practice that plaintiff attempts to fit within the parameters of *Monell*'s holding is ACS's 'policy of harassing and treating parents more harshly if those parents telecast issues critical [of] ACS.'  The Amended Complaint states no facts to support this policy; indeed, the Amended Complaint does not describe plaintiff's criticism of ACS, nor does it allege that the actions described in the Complaint were taken by defendants in response to that criticism. Even if the complaint included an account of these events, however, the claim for malicious prosecution would fail because '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.' . . . The Amended Complaint does not allege other similar instances of malicious prosecution that could raise an inference that the City maintains a policy or custom of deliberate indifference to these types of unconstitutional deprivations."); *Shapiro v. Kronfeld*, 00-CV-6286, 2004 WL 2698889, at *22 (S.D.N.Y. Nov. 24, 2004) (dismissing plaintiffs' *Monell* claim because plaintiffs made only conclusory assertions "that the policies of Defendants Scoppetta, ACS, Board, and the City concerning investigation of child abuse or neglect, removing and detaining children, and prosecuting claims of child abuse and neglect, violated their rights under the Fourth, Fifth and Fourteenth Amendments . . ., and that their failure to train employees in conducting and completing investigations and prosecutions for abuse and neglect violated their constitutional rights").

### 7.     Plaintiff Schramm's Claims

Defendants argue, in their memoranda of law, that Sarah Schramm should be dismissed from this action as a Plaintiff because, *inter alia*, Plaintiffs have failed to allege facts plausibly suggesting that she has standing to bring a claim under 42 U.S.C. § 1983.  (Dkt. No. 19, Attach. 3, at 13 [attaching page "11" of the Oswego County Defs.' Memo. of Law]; Dkt. No. 20, Attach 8, at 14-15 [attaching pages "11" and "12" of the Onondaga County Defs.' Memo. of Law].)  As stated above in Part I.C. of this Decision and Order, Plaintiffs have chosen not to respond to this argument.  (*See generally* Dkt. No. 29, Attach. 1 [Plfs.' Memo of Law].)  After carefully considering this aspect of Defendants' unopposed motions, the Court is satisfied that Defendants have met their modest threshold burden of establishing entitlement to dismissal of this claim based on this ground.[43]  The Court notes that this aspect of Defendants' motions would survive even the heightened scrutiny appropriate on a contested motion.  The Court notes also that, in making this finding, it may, and does, rely on the Defendant Oswego County Department of Social Services' letter to Plaintiff Schramm, dated November 30, 2005, as having been incorporated by reference into Plaintiffs' Amended Complaint.  *See*, *supra*, note 20 of this Decision and Order.

For these reasons, to the extent that the claims of Plaintiff Schramm have not already been dismissed for the reasons stated above in Parts III.B.1. through III.B.6. of this Decision and Order, those claims are dismissed for failure to allege facts plausibly suggesting that she has standing to bring a claim under 42 U.S.C. § 1983.

---

[43]     *See*, *supra*, note 21 of this Decision and Order.

8.      **Claims Asserted Under New York State Law**

Finally, in the interest of thoroughness, the Court notes that, even if it were not inclined to dismiss Plaintiffs' First and Fourth Causes of Action (both asserting state law claims) for failure to state a claim upon which relief can be granted pursuant Fed. R. Civ. P. 12(b)(6), the Court would decline to exercise supplemental jurisdiction over these claims in light of its dismissal of all of Plaintiffs' federal claims.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motions for summary judgment (Dkt. Nos. 19, 20, 25, 28) are **DENIED**; and it is further

**ORDERED** that Defendants' motions to dismiss (Dkt. Nos. 19, 20, 25, 28) are **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Amended Complaint (Dkt. No. 21) is **DISMISSED**.

Dated: July 23, 2010
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge